**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fannie Mae, a corporation organized and existing under the laws of the United States,<br><br>    Plaintiff,<br><br>vs.<br><br>Anthony P. Laruffa, an individual; Anthony P. Laruffa, as Trustee of the Camino Real Trust under trust dated July 22, 1998; John Grassia, an individual; John Grassia, as Trustee of the Grassia Trust dated December 23, 1996, as amended and restated October 9, 2006; and John Does I-X,<br><br>    Defendants. | No. CV-12-0301-TUC-RCC (BGM)<br><br>**REPORT AND RECOMMENDATION** |

Currently pending before the Court is Plaintiff's Motion for Summary Judgment (Doc. 146). Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure, this matter was referred to Magistrate Judge Macdonald for Report and Recommendation. The motion is fully briefed, oral argument was held on July 7, 2014, and the matter taken under advisement. Minute Entry 7/7/2014 (Doc. 165). The Magistrate Judge recommends that the District Court grant in part and deny in part Plaintiff's motion (Doc. 146).

. . .

. . .

. . .

. . .

## I.    FACTUAL BACKGROUND

### *A.    The Loans*

On or about January 2, 2002, Plaintiff Fannie Mae's predecessor-in-interest, EF&A Funding, LLC ("EF&A"), made a loan (the "2002 Loan") to the predecessor-in-interest of 3985 Cornerstone Apartments, LLC ("the Borrower"), in the original principal amount of six million two hundred and seventy-five thousand dollars ($6,275,000.00).[1] Pl.'s SOF (Doc. 147) at ¶ 1 & Exh. "A" at ¶ 4; *see also* Def. Grassia's Statement of Disputed Facts in Opp. to Pl.'s Mot. for Summ. J. (Doc. 155) at ¶ 1. The 2002 Loan was evidenced by, *inter alia*, a Multifamily Note (the "2002 Note"), as amended or modified from time to time, dated January 2, 2002.[2] Pl.'s SOF (Doc. 147) at ¶ 1 & Exh. "B." The 2002 Note was secured by, *inter alia*, a Multifamily Deed of Trust, Assignment of Rents, and Security Agreement dated January 2, 2002 (the "2002 Deed of Trust") and recorded in the Official Records of Pima County, Arizona (the "Official Records"). *Id.* at ¶ 2 & Exh. "C." The 2002 Deed of Trust encumbered certain real property being operated as a 230-unit residential apartment complex, located at 3985 North Stone Avenue, Tucson, Arizona, together with all personal property related thereto (collectively, the "Property") by a valid lien and first position security interest. *Id.*

---

[1] Defendant Grassia, individually, and on behalf of the Grassia Trust dated December 23, 1996, as amended and restated October 9, 2006 (hereinafter "Defendant Grassia") purportedly "disputes the undefined term 'Borrower' as it relates to the numerous documents[;]" however, he himself defines the term in his first statement of fact, and this is identical to the definition found in Plaintiff's Exhibit "A," Declaration of Fannie Mae in Support of Plaintiff's Motion for Summary Judgment. Def. Grassia's Statement of Disputed Facts in Opp. to Pl.'s Mot. for Summ. J. (Doc. 155) at ¶ 11; *see also* Def. Grassia's Statement of Disputed Facts in Opp. to Pl.'s Mot. for Summ. J. (Doc. 155) at ¶¶ 1, 3; Pl.'s SOF (Doc. 147), Exh. "A" at ¶ 4.

[2] Defendant Grassia asserts that the 2002 Note was a Non-Recourse Loan. Def. Grassia's Statement of Disputed Facts in Opp. to Pl.'s Mot. for Summ. J. (Doc. 155) at ¶ 2. As an initial matter, this is simply wrong. The 2002 Note includes an "Acknowledgment and Agreement of Key Principal to Personal Liability for Exceptions to Non-Recourse Liability." *See* Pl.'s SOF (Doc. 147), Exh. "B" at 8-9. Furthermore, courts are "not obligated to accept . . . legal conclusions as true simply because [a party] characterized them as statements of fact." *Kilroy v. Ruckelshaus*, 738 F.2d 1448, 1452 (9th Cir. 1984).

On or about December 28, 2007, Fannie Mae's predecessor-in-interest, EF&A, made a second loan (the "2007 Loan") (collectively with the 2002 Loan, "the Loans") to Borrower, in the original principal amount of one million ten thousand dollars ($1,010,000.00). Pl.'s SOF (Doc. 147) at ¶ 3 & Exh. "D." The 2007 Loan was evidenced by, *inter alia*, a Multifamily Note, as amended or modified from time to time (the "2007 Note") (collectively with the 2002 Note, "the Notes"), dated as of December 28, 2007. *Id.* The 2007 Note was secured by, *inter alia*, a Multifamily Deed of Trust, Assignment of Rents, and Security Agreement dated as of December 28, 2007, as may have been amended, modified and/or supplemented (the "2007 Deed of Trust") (collectively with the 2002 Deed of Trust, "Deeds of Trust"). *Id.* at ¶ 4 & Exh. "E."

EF&A assigned to Plaintiff Fannie Mae the Loans, the Notes, the Deeds of Trust, the Guaranties, and all other documents relating to the Loans. Pl.'s SOF (Doc. 147) ¶ 5 & Exhs. "F" & "G." Through this assignment, Plaintiff Fannie Mae became the owner and holder of the Loan Documents, and thereby entitled to enforce the same. *Id.* at ¶ 6. Defendants LaRuffa[3] and Grassia assumed the obligations of the Loan Documents through Assumption and Release Agreements recorded on May 29, 2003 and December 31, 2007 in the Official Records.[4] *Id.* at ¶ 7 & Exhs. "H" & "I." In Defendant LaRuffa's Responses to Plaintiff's First Set of Discovery Requests, Defendant LaRuffa "admitted" that he executed each of the Assumptions, as well as the 2007 Note and Guaranty, both in his individual capacity and as

---

[3]Defendant LaRuffa refers to Anthony P. LaRuffa, individually, and on behalf of the Camino Real Trust under trust dated July 22, 1998.

[4]Defendant Grassia denies that he assumed the obligations of the Loan Documents; however, the documents speak for themselves, and Mr. Grassia's signature appears as a "New Key Principal" on the December 31, 2007 Assumption and Release Agreement. Def. Grassia's Statement of Disputed Facts in Opp. to Pl.'s Mot. for Summ. J. (Doc. 155) at ¶ 7; Pl.'s SOF (Doc. 147), Exh. "I" at 10. Furthermore, the December 31, 2007 Assumption and Release Agreement is a transfer of the 2002 Note and provides:
> Assumption by the New Key Principals of Liability for the Exceptions to Non-Recourse. New Key Principals hereby assume all liability under the provisions of the Acknowledgment.

Pl.'s SOF (Doc. 147), Exh. "I" at 4 ¶ (5).

trustee of his Trust. Pl.'s SOF (Doc. 147) ¶ 8 & Exh. "J;" *see also* Fed. R. Civ. P. 36(b). Similarly, Defendant Grassia "admitted" to his execution of the 2007 Note containing the Guaranty.[5] Pl.'s SOF (Doc. 147) ¶ 9 & Exh. "K;" *see also* Fed. R. Civ. P. 36(b).

The "Acknowledgment and Agreement of Key Principal to Personal Liability for Exceptions to Non-Recourse Liability" attached to each of the Notes expressly provides:

> Key Principal, who has an economic interest in Borrower or who will otherwise obtain a material financial benefit from the Loan, hereby absolutely, unconditionally and irrevocably agrees to pay to Lender, or its assigns, on demand, all amounts for which Borrower is personally liable under Paragraph 9 of the Multifamily Note to which this Acknowledgment is attached (the "Note"). The obligations of Key Principal shall survive any foreclosure proceeding, any foreclosure sale, any delivery of any deed in lieu of foreclosure, and any release of record of the Security Instrument. Lender may pursue its remedies against Key Principal without first exhausting its remedies against the Borrower or the Mortgaged Property. All capitalized terms used but not defined in this Acknowledgment shall have the meanings given to such terms in the Security Instrument. As used in this Acknowledgment, the term "Key Principal" (each if more than one) shall mean only those individuals or entities that execute this Acknowledgment.

Pl.'s SOF (Doc. 147), Exh. "B" at 10 & Exh. "D" at 10. Borrower defaulted on its obligations as outlined in the Loan Documents by, *inter alia*, failing to pay amounts due and owing. Pl.'s SOF (Doc. 147) at ¶ 11; *see also* Hr'g Tr. 7/7/2014 (Doc. 169) 13:13-19. As a result of this default, Plaintiff Fannie Mae became entitled to enforce its rights under the Loan Documents against Defendants. Pl.'s SOF (Doc. 147) at ¶ 11.

On or about December 15, 2011, Borrower granted a deed of trust in favor of Larry Todt, as the beneficiary thereof, in the amount of $7,600,000.00. Pl.'s SOF (Doc. 147) ¶ 12; *see also* Pl.'s SOF (Doc. 147), Exh. "L." This deed of trust was recorded on December 15,

---

[5] Defendant Grassia "denies the characterization that he admitted to his execution of a 'Guaranty,' and the characterization that there is a 'Guaranty[.]'" Def. Grassia's Statement of Disputed Facts in Opp. to Pl.'s Mot. for Summ. J. (Doc. 155) at ¶ 9. Despite the boilerplate objections included in Defendant Grassia's responses, he "admits" that he executed the 2007 Note. Pl.'s SOF (Doc. 147), Exh. "K" ¶ 2. The 2007 Note contains an "Acknowledgment and Agreement of Key Principal to Personal Liability for Exceptions to Non-Recourse Liability" as a separate instrument, signed by Defendant Grassia. Pl.'s SOF (Doc. 147), Exh. "D" at 10-12. Defendant Grassia's objections notwithstanding, this Acknowledgment is a Guaranty.

- 4 -

2011 in the Official Records.[6] Pl.'s SOF (Doc. 147), Exh. "L." The 2002 and 2007 Deeds of Trust define a "Transfer" as:

> (A) a sale, assignment, transfer or other disposition (whether voluntary, involuntary or by operation of law); (B) the granting, creating or attachment of a lien, encumbrance or security interest (whether voluntary, involuntary or by operation of law); (C) the issuance or other creation of an ownership interest in a legal entity, including a partnership interest, interest in a limited liability company or corporate stock; (D) the withdrawal, retirement, removal or involuntary resignation of a partner in a partnership or a member or manager in a limited liability company; or (E) the merger, dissolution, liquidation, or consolidation of a legal entity. "transfer" does not include (i) a conveyance of the Mortgaged Property becoming part of a bankruptcy estate by operation of law under the United States Bankruptcy Code. For purposes of defining the term "Transfer," the term "partnership" shall mean a general partnership, a limited partnership, a joint venture and a limited liability partnership, and the term "partner" shall mean a general partner, a limited partner and a joint venturer.

Pl.'s SOF (Doc. 147), Exh. "C" ¶ 1(z) & Exh. "E" ¶ 1(z). The property transfer constituted an event of default under the 2002 and 2007 Deeds of Trust, triggering personal liability under the Loan Documents. *Id.*, Exh. "C" ¶¶ 21, 22 & Exh. "E" ¶¶ 21, 22.

### *B.  Bankruptcy Proceedings*

On September 3, 2010, Borrower filed a Chapter 11 bankruptcy case in the United States Bankruptcy Court for the District of Arizona, Case Number 4:10-bk-28309-EWH.[7] Petition (Doc. 1); Pl.'s SOF (Doc. 147) ¶ 15. On October 18, 2010, the bankruptcy court

---

[6] Defendant Grassia vehemently disputes that there was a transfer to Mr. Todt or that he had anything to do such a transfer; however, the documents speak for themselves. Def. Grassia's Statement of Disputed Facts in Opp. to Pl.'s Mot. for Summ. J. (Doc. 155) at ¶¶ 12-14; *see also* Pl.'s SOF (Doc. 147), Exh. "L." The Court finds that this argument may be relevant to any cross-claim that Defendant Grassia may have against Defendant LaRuffa, but it does not relate to the fact that such a transfer was recorded, and Plaintiff is therefore entitled to rely upon such a recorded document. *See* A.R.S. § 33-416 ("Record of instrument duly recorded as notice").

[7] "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The docket sheet of the United States Bankruptcy Court for the District of Arizona is proper material for judicial notice. *See Headwaters Inc. v. U.S. Forest Service*, 399 F.3d 1047, 1051 n.3 (taking judicial notice of the docket from a proceeding before another tribunal).

- 5 -

issued its order dismissing Case Number 4:10-bk-28309-EWH. Order 10/18/2010 (Doc. 40); Pl.'s SOF (Doc. 147) ¶ 15.

On February 28, 2011, Borrower filed a second Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Arizona, Case No. 4:11-bk-04870-EWH. Petition (Doc. 1); Pl.'s SOF (Doc. 147) ¶ 16. Defendant LaRuffa acted as the representative of the Borrower in both bankruptcy cases.[8] *See* Case No. 4:10-bk-28309-EWH, Petition (Doc. 1); Case No. 4:11-bk-04870-EWH, Petition (Doc. 1); Pl.'s SOF (Doc. 147) ¶ 16. On April 14, 2011, Plaintiff filed its Proof of Claim asserting that Borrower owed "[a]t least $7,016,933.03 plus accrued and accruing interest, fees, costs (including attorneys' fees) and other amounts." Case No. 4:11-bk-04870-EWH, Claims Register, Claim No. 14 (Doc. 14-1); Pl.'s SOF (Doc. 147) ¶ 17. On December 13, 2011, the bankruptcy court issued its Order Dismissing Case for Debtor's Bad Faith. Case No. 4:11-bk-04870-EWH (Doc. 123); Pl.'s SOF (Doc. 147) ¶ 18.

On December 15, 2011, Larry Todt and others instituted an involuntary bankruptcy proceeding against Borrower in the United States Bankruptcy Court for the Central District of California. Case No. 8:11-bk-27201-ES, Petition (Doc. 1); Pl.'s SOF (Doc. 147) ¶ 19. Plaintiff states that there was a second bankruptcy filed in California as well. Pl.'s SOF (Doc. 147) ¶ 19. These matters were transferred back to Arizona.[9] USBC C.D. Cal. Case No. 8:11-bk-27201-ES, Minute Entry 1/12/2012 (Doc. 14) & Minute Entry 2/9/2012 (Doc. 19); USBC D. Ariz. 4:12-bk-02155-EWH, Case Transfer 2/7/2012 (Doc. 1).

---

[8] Defendant Grassia "disputes that Mr. LaRuffa acted as his representative in any capacity during the Bankruptcy cases." Def. Grassia's Statement of Disputed Facts in Opp. to Pl.'s Mot. for Summ. J. (Doc. 155) at ¶ 16. This assertion does not change the fact, however, that Defendant LaRuffa appears as the representative for the Borrower in the filings with the bankruptcy court.

[9] The Court was only able to find evidence of the Involuntary Chapter 7 matter filed in California and transferred to the District of Arizona Case Number 4:12-bk-02155-EWH. The Court was unable to find information regarding the second California bankruptcy. On February 1, 2012, there was, however, a civil case filed in the United States District Court for the Central District of California by Defendant LaRuffa, Mr. Todt, and 3985 Cornerstone Apartments, LLC against *inter alia* Fannie Mae. USDC C.D. Cal. 8:12-cv-00165-JLS-RNB, Compl. (Doc. 1).

*C.     Trustee's Sale*

As a result of the two subsequent bankruptcy proceedings, the trustee's sale of the Property was delayed until March 13, 2012.[10]  Pl.'s SOF (Doc. 147) ¶ 22.  On March 13, 2012, Fannie Mae was the successful bidder at the trustee's sale of the Property, with a credit bid of $1,453,190.12.  Pl.'s SOF (Doc. 147) ¶ 23 & Exh. "P."  A copy of the Trustee's Deed and Bill of Sale is recorded in the Official Records at Sequence No. 2012-0740207. *Id.*, Exh. "P."  As of March 13, 2012, the amounts due and owing under the 2002 Loan included at least the following:

| | |
|---|---|
| Principal Balance: | $5,585,378.85 |
| Accrued Interest: | $596,347.80 |
| Default Interest: | $339,466.91 |
| Processing Fee: | $450.00 |
| Legal Fees: | $10,607.00 |
| Appraisal Fees: | $1,500.00 |
| Protective Advance: | $80,292.01 |
| Interest on Protective Advance: | $5,203.22 |
| Late Charges: | $30,212.55 |
| **Amount Due:** | **$6,649,458.34** |

*Id.* at ¶ 24.

As of March 13, 2012, the amounts due and owing under the 2007 Loan included at least the following amounts:

| | |
|---|---|
| Principal Balance: | $976,604.25 |
| Accrued Interest (3/1/2012): | $89,061.97 |
| Default Interest (3/1/2012): | $59,355.84 |
| Late Charges: | $4,679.36 |

---

[10]Defendant Grassia disputes Plaintiff's inclusion of him in the phrase "bankruptcy proceedings filed by Defendants[.]"  Def. Grassia's Statement of Disputed Facts in Opp. to Pl.'s Mot. for Summ. J. (Doc. 155) at ¶ 22.  Regardless of who instituted the bankruptcy proceedings, it was done on behalf of the Borrower, and had the effect of delaying the trustee's sale.

- 7 -

| | |
|---|---:|
| Processing Fee: | $450.00 |
| Per Diem Interest (3/1/12 - 3/13/12): | $1,849.08 |
| Per Diem Deflt.-Int. (3/1/12 - 3/13/12): | $1,302.12 |
| Legal Fees: | $300,563.50 |
| Appraisal Fees & BPO: | $11,500.00 |
| Third Party Reports: | $8,250.00 |
| Prepayment Premium: | $30,122.34 |
| Less Amounts Received: | ($29,246.25) |
| **Amount Due:** | **$1,454,492.24** |

*Id.* at ¶ 25. Accordingly, the total amount owed by Defendants to Fannie Mae as of March 13, 2012, the date of the trustee's sale, was $8,103,950.58.[11] *Id.* at ¶ 26. Defendant LaRuffa asserts that this amount due is "incorrect and wildly too high[;]" however, neither he nor Defendant Grassia provide any documentation to the contrary. Def. LaRuffa's SOF in Opp. to Pl.'s Mot. for Summ. J. (Doc. 152) ¶ 6.

### D.     *Property Appraisal*

Plaintiff Fannie Mae hired Mr. Craig W. Johnson of MJN Enterprises, Inc. ("MJN") to prepare an appraisal of the Property. Pl.'s SOF (Doc. 147) ¶ 27. MJN prepared an appraisal of the property based upon a valuation date of December 15, 2011. *Id.* at ¶ 28. Based upon Mr. Johnson's analysis, the fair market value of the Property as of December 15, 2011, was $5,100,00.00. Pl.'s SOF (Doc. 147), Exh. "R" at 2. Defendant LaRuffa opines that in "his opinion . . . the value of the property on December 15, 2011 was at least $36,000 per unit, or a total of $8,280,000 for the complex." Def. LaRuffa's SOF in Opp. to Pl.'s Mot. for Summ. J. (Doc. 152) ¶ 5.

. . .

. . .

---

[11]Defendant Grassia "disputes the amounts states are owed by the 'Defendant' as an aggregate group[,] [and] Grassia should not be linked to the actions taken by LaRuffa, or amounts owed by the 'Borrower[.]'" Def. Grassia's Statement of Disputed Facts in Opp. to Pl.'s Mot. for Summ. J. (Doc. 155) at ¶ 26. As noted, *supra*, this argument is without merit.

- 8 -

## II. STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 255 (1986), "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Thus, factual disputes that have no bearing on the outcome of a suit are irrelevant to the consideration of a motion for summary judgment. *Id.* In order to withstand a motion for summary judgment, the nonmoving party must show "specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Moreover, a "mere scintilla of evidence" does not preclude the entry of summary judgment. *Anderson*, 477 U.S. at 252. The United States Supreme Court also recognized that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). Questions of statutory construction and contract interpretation are properly resolved on summary judgment as questions of law for the Court. *See Diamond Fruit Growers, Inc. v. Krack Corp.*, 794 F.2d 1440, 1442 (9th Cir. 1986); *see also Arizona Retail Systems, Inc. v. Software Link, Inc.*, 831 F.Supp. 759, 762 (D. Ariz. 1993).

## III.     ANALYSIS

Plaintiff seeks summary judgment and a finding by this Court that Defendants breached the contracts established by the Loan Documents and Guaranties thereby causing Defendants to be liable to Plaintiff in the amount of the deficiency remaining after the trustee's sale of the Property. Pl.'s Mot. for Summ. J. (Doc. 146) 11-12. Plaintiff also seeks an award of attorneys' fees.

### *A. Breach of Contract*

"It is well established that, in an action based on breach of contract, the plaintiff has the burden of proving the existence of a contract, breach of the contract, and resulting damages." *Chartone v. Bernini*, 207 Ariz. 162, 170, 83 P.3d 1103, 1111 (Ct. App. 2004) (citations omitted). "The nature and extent of a guarantor's liability depends upon the terms of the guaranty contract." *Tenet Healthsystem TGH, Inc. v. Silver*, 204 Ariz. 217, 219, 52 P.3d 786, 788 (Ct. App. 2002) (citations omitted). Furthermore, "[c]onstruction of a contract is a question of law for the court." *Provident Nat'l Assurance Co. v. Sbrocca*, 180 Ariz. 464, 465, 885 P.2d 152, 153 (Ct. App. 1994) (citations omitted).

### **1. Existence of a Contract**

As an initial matter, Fannie Mae asserts that "the Loan Documents in general, and the Guaranties in particular, constitute valid and enforceable contracts between Defendants and Fannie Mae[.]" Pl.'s Mot. for Summ. J. (Doc. 146) at 11. Defendant LaRuffa agrees that a valid contract existed between the parties. Hr'g Tr. 7/7/2014 (Doc. 169) 13:13-19. Defendant Grassia argues that any "liability of the Key Principal for non-payment is limited since <u>the Borrower's liability is limited</u>." Def. Grassia's Response in Opp. to Pl.'s Mot. for Summ. J. (Doc. 154) at 3 (emphasis in original). Defendant Grassia argues that the non-recourse nature of the loan means that he cannot be held personally liable for any deficiency. *Id.* Defendant Grassia, however, would have this Court interpret the "Acknowledgment and Agreement of Key Principal to Personal Liability for Exceptions to Non-Recourse Liability" (the Guaranty) attached to each Note as meaningless. "By guarantying the repayment of a non-recourse note, [Defendants] implicitly consented to liability greater than that of the payor." *Sbrocca*, 180 Ariz. at 466, 885 P.2d at 154. Moreover, "[t]he nature and extent of a guarantor's liability depends upon the terms of the contract." *Id.* (citations omitted). First the title of the Guaranty, "Acknowledgment and Agreement of Key Principal to Personal Liability for Exceptions to Non-Recourse Liability," demonstrates the intention of the parties to hold Key Principals liable for the full amount of the loans. Furthermore, the express terms of the Guaranties provides that Defendants agreed to guaranty "all amounts for which

1 Borrower is personally liable[.]" Pl.'s SOF (Doc. 147), Exh. "B" at 10 & Exh. "D" at 10.
2 Additionally, "[t]he obligations of Key Principal shall survive any foreclosure proceeding,
3 any foreclosure sale, any delivery of any deed in lieu of foreclosure, and any release of
4 record of the Security Instrument." *Id.* Accordingly, the Court finds that there was a valid
5 and enforceable contract between the parties.

### 2. Breach

Plaintiff asserts that "Defendants have breached the Guaranties by failing to pay amounts due and owing to Fannie Mae[.]" Again, Defendant LaRuffa does not dispute this assertion. Hr'g Tr. 7/7/2014 (Doc. 169) 13:13-19. Defendant Grassia argues that because Defendant LaRuffa "did not have the legal authority from 3985 Cornerstone Apartments, LLC to execute the 'Assignment and Deed of Trust' dated November 22, 2011, or deliver it to Larry Todt . . . [t]here was no actual transfer[.]" Def. Grassia's Response in Opp. to Pl.'s Mot. for Summ. J. (Doc. 154) at 4.

Although the validity of the transfer may affect Defendant Grassia's rights as to a claim against Defendant LaRuffa, the transfer was duly recorded in the Official Records, and thereby gave Plaintiff Fannie Mae notice of an event of default under the 2002 and 2007 Deeds of Trust, triggering personal liability under the Loan Documents. Pl.'s SOF (Doc. 147), Exh. "C" ¶¶ 21, 22 & Exh. "E" ¶¶ 21, 22; *see also* A.R.S. § 33-416 ("Record of instrument duly recorded as notice"). Additionally, as discussed *supra*, Defendants Grassia and LaRuffa both signed personal guaranties ensuring payment for the full amount due to Fannie Mae, an obligation which survived foreclosure of the property. *See* Pl.'s SOF (Doc. 147), Exh. "B" at 10 & Exh. "D" at 10. As such, the Court finds that there has been a breach of the contract.

### 3. Damages

Fannie Mae asserts that it "has been damaged in the amount equal to the Deficiency." Pl.'s Mot. for Summ. J. (Doc. 146) at 11. Defendants LaRuffa and Grassia dispute the fair market value of the property. Def. LaRuffa's Opp. to Pl.'s Mot. for Summ. J. (Doc. 151) at 2; Def. Grassia's Response in Opp. to Pl.'s Mot. for Summ. J. (Doc. 154) at 8.

1   Arizona law provides that a "deficiency judgment shall be for an amount equal to the
2   sum of the total amount owed the beneficiary as of the date of the [trustee's] sale, as
3   determined by the court less the fair market value of the trust property on the date of the sale
4   as determined by the court of the sale price of the trustee's sale, whichever is higher." A.R.S.
5   § 33-814.  Furthermore, "'fair market value' means the most probable price, as of the date
6   of the execution sale, in cash, or in terms equivalent to cash, or in other precisely revealed
7   terms, after deduction of prior liens and encumbrances with interest to the date of sale, for
8   which the real property or interest therein would sell after reasonable exposure in the market
9   under conditions requisite to fair sale, with the buyer and seller each acting prudently,
10  knowledgeably and for self-interest, and assuming that neither is under duress." *Id.*

11  Based upon the December 15, 2011 valuation the fair market value of the Property at
12  the time of the trustee's sale was $5,100,00.00.  Pl.'s SOF (Doc. 147), Exh. "R" at 2.
13  Defendant LaRuffa opines that in "his opinion . . . the value of the property on December 15,
14  2011 was at least $36,000 per unit, or a total of $8,280,000 for the complex." Def. LaRuffa's
15  SOF in Opp. to Pl.'s Mot. for Summ. J. (Doc. 152) ¶ 5.  Based upon Plaintiff's valuation,
16  Defendants would be liable for the difference between the total amount owed
17  ($8,103,950.58) minus the fair market value ($5,100,00.00), or a total of $3,003,950.58.
18  Conversely, if Defendant LaRuffa's value is accepted, there would be no deficiency, and
19  Defendants would owe nothing.  Because Defendant LaRuffa is a competent witness to
20  testify regarding value, the Court finds that this is a question of fact, which precludes
21  summary judgment.

### 4. Attorneys' Fees

23  Plaintiff seeks attorneys' fees pursuant to the Loan Documents and A.R.S. § 12-
24  341.01.  In light of the question of fact regarding fair market value, the Court finds this
25  request to be premature.
26  . . .
27  . . .
28  . . .

- 12 -

**IV.    CONCLUSION**

The Magistrate Judge recommends granting Plaintiff summary judgment to the extent that there is a contract between the parties, and a breach thereof.  The Magistrate Judge further recommends denying Plaintiff summary judgment to the extent that there is a question of material fact regarding the fair market value of the property at the time of the trustee's sale.

**III.    RECOMMENDATION**

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order:

1) GRANTING IN PART and DENYING IN PART Plaintiff's Motion for Summary Judgment (Doc. 146).

Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2).  If objections are not timely filed, they may be deemed waived.  If objections are filed, the parties should use the following case number: **CV-12-0301-TUC-RCC**.

DATED this 16th day of January, 2015.

_____
Bruce G. Macdonald
United States Magistrate Judge

- 13 -